1
2
3
4

UNITED STATES DISTRICT COURT

5

EASTERN DISTRICT OF WASHINGTON

6

7   RHONDA CHANDLER,                    No. 1:14-CV-03114-JTR

8              Plaintiff,              ORDER GRANTING IN PART
                                       PLAINTIFF'S MOTION FOR
9                                      SUMMARY JUDGMENT
        v.
10

11  CAROLYN W. COLVIN,
    Commissioner of Social Security,
12

13             Defendant.

14

15         **BEFORE THE COURT** are cross-motions for summary judgment.  ECF

16  No. 19, 25.  Attorney D. James Tree represents Rhonda Chandler (Plaintiff);

17  Special Assistant United States Attorney Thomas M. Elsberry represents the

18  Commissioner of Social Security (Defendant).  The parties have consented to

19  proceed before a magistrate judge.  ECF No. 9.  After reviewing the administrative

20  record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's

21  Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary

22  Judgment; and **REMANDS** the matter to the Commissioner for additional

23  proceedings pursuant to 42 U.S.C. § 405(g).

24                          **JURISDICTION**

25         Plaintiff filed applications for Disability Insurance Benefits (DIB) and

26  Supplemental Security Income (SSI) on July 13, 2010, alleging disability

27  beginning December 1, 2009.  Tr. 17.  The applications were denied initially and

28  upon reconsideration.  Tr. 104-11, 113-24.  Administrative Law Judge (ALJ) Gene

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 1

Duncan held a video hearing on September 7, 2012, at which Plaintiff, represented by counsel, testified as did consulting physician Robert B. Sklaroff, M.D., and vocational expert (VE) Trevor Duncan.  Tr. 36-99.  The ALJ issued an unfavorable decision on December 11, 2012.  Tr. 17-30.  The Appeals Council denied review.  Tr. 1-4.  The ALJ's December 2012 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on August 14, 2014.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 40 years old at the time she filed her DIB and SSI applications.  Tr. 217.  Plaintiff dropped out of school in eighth grade when she became pregnant.  Tr. 39-40, 316.  Plaintiff has no vocational training, Tr. 40, but has worked as a nurse's aide, janitor, and short order cook, Tr. 41-42, 70.

At the administrative hearing, Plaintiff testified she didn't think she could work because of her depression, anxiety, and pain caused by standing.  Tr. 42.  Plaintiff also states she suffers from nightmares, anxiety, panic attacks, and chronic pain in her back that limits her ability to walk and stand.  Tr. 313-317.  Plaintiff takes prescription medication—Lorazepam—when she gets "real depressed or anxious."  Tr. 62.  Plaintiff attended physical therapy for over a year trying to improve her back pain and continues to perform exercises recommended by her physical therapist.  Tr. 42-43, 59, 60.  Plaintiff also tried medication and steroid injections for her pain but they made her sick.  Tr. 43-44, 58.

Plaintiff testified she has trouble reading and doing simple math.  Tr. 40.  Plaintiff stated she "can't sit and focus on one thing" and has trouble sitting through a half hour television show.  Tr. 65.  Plaintiff is "nervous and scared"

around people, especially men.  Tr. 64.  On a good day, Plaintiff can shower, take her dogs on a short walk, and watch television, but does not do any other chores. Tr. 72-73.  On bad days, Plaintiff is mostly confined to her room, although she might take a shower or fix something to eat.  Tr. 74.  On account of her back pain, Plaintiff states she can only walk about one block, stand between ten minutes and one hour, and sit for only "a little bit at a time."  Tr. 43-44.  Plaintiff states her pain can be so bad that she can't get out of bed or move and "[a]ll [she] do[es] is cry." Tr. 74-75.  Plaintiff goes shopping about once a month and has no problem handling her finances.  Tr. 247.

### STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either

disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On December 11, 2012, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Preliminary, for purposes of Plaintiff's DIB application, the ALJ found that Plaintiff met the insured requirements through December 31, 2013. Tr. 19.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 1, 2009, the alleged onset date. Tr. 19.

At step two, the ALJ determined Plaintiff had the following severe impairments: chronic low back pain; sacroiliitis; major depressive disorder, recurrent, moderate to severe; and anxiety disorder, not otherwise specified (NOS). Tr. 19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 20.  The ALJ found Plaintiff had the residual function capacity (RFC) to perform light work except:

> she is limited to standing or walking four hours of an eight-hour workday.  She can perform occasional[] postural movements.  She should not climb ladders, ropes or scaffolds.  She should not have intense twisting of the upper body.  She should not work at heights.  She should not work with heavy machinery or heavy vibrating equipment.  She would need a sit-stand option for at least four . . . [hours] a workday.  She can perform simple, learned work.  She can have moderate stress.  She should work independently, not in coordination with coworkers.

Tr. 22.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  Tr. 28.  At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the VE, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of cashier II, assembler, and storage rental clerk.  Tr. 28-29.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from December 1, 2009, through the date of the ALJ's decision.  Tr. 29.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to consider whether Plaintiff met Listing 12.05C, (2) not crediting Plaintiff's testimony about the severity of her symptoms, (3) finding that Plaintiff could work on a regular and consistent basis, and (4) improperly weighing the lay testimony of Amber Chandler.

**DISCUSSION**

**A.   Listing 12.05C**

Plaintiff argues the ALJ erred by not considering whether Plaintiff met Listing 12.05C, which pertains to intellectual disability.  ECF No. 19 at 10-13.

Claimants generally have the initial burden of proving their symptoms rise to the severity set forth in the listings.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  Once the claimant presents evidence in an effort to establish equivalence, the ALJ must compare the claimant's impairments to the listing criteria.  *Id.*; *see also Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that the ALJ must identify the relevant listed impairments and compare each of the listed criteria to the evidence of claimants' symptoms).

Listing 12.05 consists of an "introductory paragraph with the diagnostic description for intellectual disability . . . and four sets of criteria (paragraphs A through D)."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00A ¶ 4.  A claimant must meet the standard set forth in the introductory paragraph and at least one of the four listed criteria.  *Id.*  Listing 12.05 reads, in relevant part,

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D, are satisfied . . .
>
> C. A valid verbal, performance, or full IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt 404, Subpt. P, App. 1, Listing 12.05.

In *Thresher v. Astrue*, 283 F. App'x 473 (9th Cir. 2008), the Ninth Circuit addressed an issue nearly identical to that raised by Plaintiff in this case.  In *Thresher*, the claimant argued that she met Listing 12.05C and that the ALJ erred

by not "expressly discuss[ing]" that Listing.  *Id.* at 474-475.  Although the ALJ at one point suggested that the claimant was not intellectually disabled, by not discussing Listing 12.05C, the Ninth Circuit concluded "it unclear whether the ALJ came to grips with the specific requirements of [Listing 12.05C] when she issued her decision." *Id.* at 475.  The Ninth Circuit observed that the ALJ had authority to decide if the claimant's IQ score was "valid," but without considering the Listing 12.05 criteria, there was no way to ascertain whether the ALJ had found the claimant's IQ score valid or not.  *Id.*  Thus, the Ninth Circuit remanded the case for "clarification regarding the nature of the considerations applied at step 3 and, particularly, precisely what was decided and why." *Id.*

In this case, the ALJ mentioned that Plaintiff's WAIS-IV scores were in the borderline range, Tr. 21, but did not otherwise discuss Plaintiff's IQ or intellectual functioning.  Furthermore, the ALJ did not find Plaintiff's borderline intellectual functioning to be a severe impairment (an error acknowledged by Defendant, ECF No. 25 at 12) and did not reference Listing 12.05 at any point in his decision.  In formulating Plaintiff's RFC, the ALJ concluded Plaintiff had the ability to "perform simple, learned work."  Tr. 22.

The Court finds that the ALJ erred in failing to analyze Plaintiff's intellectual impairments under Listing 12.05.  It is true that neither Plaintiff nor her counsel specifically argued that she met Listing 12.05C.  Furthermore, none of the State agency reviewing physicians or the medical expert, Dr. Sklaroff, considered whether Plaintiff met Listing 12.05.  Nevertheless, there was ample evidence before the ALJ to indicate that Plaintiff lacked some degree of intellectual functioning.  In October 2012, Roland Dougherty, Ph.D., assessed Plaintiff's IQ score as 70 based on the administration of the Wechsler Adult Intelligence Scale-IV (WAIS-IV).  Tr. 533.  Dr. Dougherty indicated that the score "appeared to be valid, though [the tests] may indicate a lower level of functioning than normal given her cold and anxiety."  Tr. 532.  Dr. Dougherty diagnosed Plaintiff with

borderline intellectual functioning.  Tr. 535.  At the hearing, Plaintiff testified that she had trouble reading, doing simple math, and concentrating.  Tr. 40, 65. Plaintiff also dropped out of school in the eighth grade (albeit because she had a child) and made multiple failed attempts to obtain her GED.  Tr. 530.

Dr. Dougherty's evaluation, coupled with Plaintiff's testimony and academic background, satisfies Plaintiff's initial burden to establish listing equivalence for intellectual disability.  *Burch*, 400 F.3d at 683.  Upon Plaintiff meeting this initial burden, the ALJ was required to identify the relevant listed impairments and compare each of the listed criteria to the evidence of Plaintiff's symptoms.  *Cook*, 783 F.2d at 1173.  By not analyzing Plaintiff's impairments under Listing 12.05C, the ALJ failed to "c[o]me to grips" with the specific requirements of that Listing. *Thresher*, 283 F. App'x at 475.  Thus, the ALJ made a legal error.

The next question is whether the ALJ's failure to consider Listing 12.05C was harmless.  An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Defendant argues that any error made by the ALJ was harmless because it was not "outcome determinative."  ECF No. 25 at 11.

Defendant first argues that, based on the record, there would be no way for the ALJ to conclude Plaintiff satisfied Listing 12.05C "because she failed to provide any evidence of deficits in adaptive functioning that manifested prior to age 22."  *Id.*  Defendant points out that Plaintiff's "own reports indicate the absence of any [intellectual] deficits prior to age 22."  ECF No. 25 at 11 (citing Tr. 213, 530).  But, as argued by Plaintiff, such reports might just as well indicate that "she does not have good self-awareness of her cognitive difficulties," ECF No. 28 at 6, an observation corroborated by Dr. Dougherty who questioned Plaintiff's report of good academic functioning, Tr. 532.  Furthermore, Defendant's argument does not take into account the evidence of Plaintiff's intellectual functioning

discussed *supra* or the rebuttable presumption argued by Plaintiff discussed *infra*. Because the record does contain evidence from which the ALJ could determine that Plaintiff meets Listing 12.05C, Defendant's argument fails.

Defendant also argues that the ALJ's error in failing to consider Listing 12.05C was harmless because, in the ALJ formulation of Plaintiff's RFC, the ALJ considered Plaintiff's intellectual limitations and found Plaintiff limited to "simple, learned work." ECF No. 25 at 12 (citing Tr. 22). Defendant concedes that the ALJ erred by not finding Plaintiff's borderline intellectual functioning a severe impairment at step two, but argues that this error was harmless given the limitation contained in the RFC. *Id.* The Court disagrees that this was a harmless error. If the ALJ had found Plaintiff's borderline intellectual functioning to be a severe impairment, and the impairment satisfied Listing 12.05C, the ALJ would not have been required to formulate Plaintiff's RFC. *See Fanning v. Bowen*, 827 F.2d 631, 634 (9th Cir. 1987) ("If [the claimant] suffers from the impairment listed in [Listing] 12.05(C), and the impairment meets the 12 month duration requirement specified by statute . . . he must be found disabled without consideration of his age, education, and work experience.") (citing 20 C.F.R. § 416.920(d)) (internal citation omitted).

Without specific findings regarding the Listing 12.05C criteria at step three, it is not clear from the record that the "error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. Because the Court finds that the ALJ erred, and the error was not harmless, the Court will remand this case for the ALJ to consider whether Plaintiff meets Listing 12.05C as discussed in more detail *infra*.

**B.   Credibility**

Plaintiff argues that the ALJ erred in finding her symptom reporting less than credible. ECF No. 19 at 17-22.

///

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff not fully credible concerning the intensity, persistence, and limiting effects of her symptoms.  Tr. 23, 26.  The ALJ reasoned that Plaintiff was less than credible because her symptom reporting was contrary to (1) the medical evidence, (2) the fact that she sought minimal treatment for her mental health conditions and back pain, and (3) her activities of daily living (ADL).  Tr. 26.  The ALJ also reasoned that Plaintiff appeared to exaggerate her symptoms.  Tr. 26.

### 1.    Contrary to the Medical Evidence

The ALJ noted that, contrary to Plaintiff's reports of her physical impairments, her medical reports showed she had "a negative straight leg raise, normal gait, and intact strength and sensation of the lower extremities."  Tr. 26. The ALJ also noted inconsistencies between Plaintiff's reporting of her mental impairments and Dr. Dougherty's observations, including the fact that Plaintiff performed fair on concentration tasks, had no difficulty following instructions, and was pleasant and cooperative with good social skills.  Tr. 26, 319-320.  These observations constitute a clear and convincing reason to discount Plaintiff's credibility.

///

///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 10

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Substantial evidence supports the ALJ's conclusion that Plaintiff's reporting of her physical symptoms is inconsistent with the medical evidence. Objective testing, including MRIs and bone density testing, was largely unremarkable. Tr. 287-88, 421-422. Furthermore, physical examinations performed by Plaintiff's treating sources consistently revealed Plaintiff had normal spine motion, no dysfunction, normal gait and stance, normal reflexes, and negative straight leg test. *See e.g.* Tr. 412 (motor exam performed by Ms. Grandmason "demonstrated no dysfunction"); Tr. 414 (normal range of motion assessed by Henry Kim, M.D.).

Substantial evidence also supports the ALJ's conclusion that Plaintiff's reporting of her mental impairments is not entirely consistent with the medical evidence. Dr. Dougherty performed two psychological evaluations of Plaintiff, the first in October 2010 and the second in October 2012. In both evaluations, Dr. Dougherty diagnosed Plaintiff with depression and anxiety and various other mental impairments. *See* Tr. 319, 535. Dr. Dougherty recognized that these impairments would affect Plaintiff's ability to work, opining that Plaintiff's prognosis was "guarded" in 2010 and "poor" in 2012. Tr. 319, 536. Nevertheless, as noted by the ALJ, Dr. Dougherty's medical source statements, indicating good social skills and ability to follow simple directions, would suggest Plaintiff's mental impairments are not as disabling as she alleges. Tr. 26, 319-320, 536-537.

The Court concludes *infra* that some of the ALJ's other reasons supporting his adverse credibility determination were improper. While the ALJ did not err in relying on inconsistencies between the medical evidence and Plaintiff's reporting, on remand the ALJ should be cognizant that inconsistency with the medical evidence cannot be the sole ground for an adverse credibility determination.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 11

### 2.    Minimal Treatment

The ALJ's second reason for finding Plaintiff less than credible, i.e. that Plaintiff had no history of mental health counseling or other mental health treatment and did not consistently take medication prescribed for her back pain, Tr. 26, is not a specific, clear, and convincing reason to undermine Plaintiff's credibility.

Generally, the fact that a condition can be remedied by treatment or medication is a legitimate reason for discrediting a claimant's testimony. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Likewise, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ may also rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

It is true that Plaintiff's treating sources prescribed her medication for her pain and Plaintiff did not want to take narcotics and refused pain contracts. *See* Tr. 378 (stopped taking Vicodin because she was worried about becoming addicted and because she felt "she can manage the pain on her own"); Tr. 392 ("refused pain contracts"). The fact that Plaintiff is a recovering alcoholic and has a family history involving narcotic pill overdoses, however, is a valid, and prudent, reason for Plaintiff to be apprehensive about taking such medication. But it also seems like other treatment worked to alleviate Plaintiff's pain. *See* Tr. 378 (conditions "significantly improved" with physical therapy[1]); Tr. 383 (Plaintiff made

---

[1]Although Plaintiff was concerned about physical therapy not being covered by her insurance, apparently her insurance ended up covering at least twelve physical therapy appointments per year. *See* Tr. 296; Tr. 310 (insurance would

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 12

"incredible progress" through physical therapy); Tr. 433 (Plaintiff indicated Tramadol was "improving function and no side effects").

The ALJ also questioned why Plaintiff did not seek mental health counseling. From the Court's review of the record, the answer appears to be because her treating sources thought Plaintiff's mental impairments could be managed with medication. *See* Tr. 360 (Ms. Grandmason noting in 2009 that if Plaintiff did not respond to her medication they would "consider other therapeutic options"). There is also some indication that Plaintiff made efforts to engage in therapy, but encountered difficulties. *See* Tr. 390 (counseling agency not returning Plaintiff's calls to schedule an appointment). Given that Plaintiff apparently did not seek counseling on the advice of her treating sources, and because she eventually did seek counseling, this is not a specific, clear, and convincing reason to discount Plaintiff's credibility.

The Court notes, however, that there is also evidence that Plaintiff was inconsistent with her medication for her mental impairments and that certain combinations of medication improved her symptoms. *See* Tr. 363 (Plaintiff stopped taking Wellbutrin after 2-3 weeks); Tr. 368 (stopped taking Celexa for depression because "she says she really does not need it"); Tr. 383 ("discontinued Celexa abruptly"); Tr. 394-397 (Plaintiff reported her depression and anxiety improved "significantly" while she was taking Venlafaxine regularly, with periodic use of Lorazepam).

On remand, the ALJ should review the record and be more specific about how Plaintiff's different courses of treatment, and her compliance with such treatment, compare with her symptom allegations regarding both her physical and mental impairments.

---

initially only cover four physical therapy appointments); Tr. 306 (insurance would only cover six physical therapy appointments).

### 3.    Activities of Daily Living

The ALJ's third reason for finding Plaintiff less than credible, i.e., Plaintiff's activities of daily living (ADL) were inconsistent with her alleged impairments, is not supported by substantial evidence.

"[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted).  A claimant need not be "utterly incapacitated," however, to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

In finding Plaintiff's testimony contrary to her ADL, the ALJ relied primarily on Plaintiff's own reporting of her ADL.  The ALJ noted Plaintiff's ability to care for her personal needs, care for her two dogs, prepare simple meals, perform household chores, drive a car, shop in stores, handle personal finances, watch television, regularly go to stores and medical appointments, and read the newspaper.  Tr. 26.

The ALJ, however, significantly overstated Plaintiff's reporting of her ability to perform ADL.  Plaintiff reported shopping about once a month (lasting for about one hour) and going to medical appointments approximately two times a month.  Tr. 247-248.  Plaintiff reported doing dishes and clothes maybe once a week, but had trouble focusing on chores.  Tr. 246-247.  For meals, Plaintiff reported making soup, sandwiches, and microwave dinners.  Tr. 246.  On bad days, Plaintiff reported spending most of her time lying in bed.  Tr. 74-75, 244, 528; *see also* Tr. 76-77 (Plaintiff estimating two out of three days were "bad days").  Plaintiff's reporting of her limited ADL is consistent with substantial evidence in the record, including the testimony of Plaintiff's daughter and her reports made to Dr. Dougherty.  *See* Tr. 78-82, 318-319, 534-535.  Because the ALJ mischaracterized Plaintiff's reporting to include much more extensive ADL than

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 14

1    she reported, this reason is not supported by substantial evidence.  *See Thompson*

2    *v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("The sporadic performance of

3    household tasks or work does not establish that a person is capable of engaging in

4    substantial gainful activity.").

5        **4.    Symptom Exaggeration**

6        The ALJ's fourth reason for finding Plaintiff less than credible, i.e., Dr.

7    Dougherty's opinion that Plaintiff appeared to exaggerate her symptoms, Tr. 26, is

8    a specific, clear, and convincing reason.

9        In determining a claimant's credibility, the ALJ may consider "ordinary

10   techniques of credibility evaluation, such as the claimant's reputation for lying,

11   prior inconsistent statements . . . and other testimony by the claimant that appears

12   less than candid."  *Smolen*, 80 F.3d at 1284; *see also Thomas v. Barnhart*, 278 F.3d

13   947, 957-959 (9th Cir. 2002) (ALJ may consider a claimant's failure "to give

14   maximum or consistent effort during . . . evaluations).

15       In Dr. Dougherty's 2010 evaluation, he conducted a mental status exam and

16   noted Plaintiff was "not obviously malingering."  Tr. 317.  In Dr. Dougherty's

17   2012 evaluation, he administered several psychological tests and noted,

18   "[Plaintiff's] effort on [the tests] appeared to be fair and the results appear to be

19   valid."  Tr. 532.  But Dr. Dougherty also noted, "[t]hough she was not clearly

20   malingering, [there were] some discrepancies between her past and present reports

21   and . . . discrepancy between her present levels of memory and intellectual

22   functioning and [Plaintiff's] reports of no significant memory difficulties . . . and

23   good academic functioning."  Tr. 533-534.  On account of these discrepancies, Dr.

24   Dougherty questioned Plaintiff's efforts during testing and "how honest or accurate

25   in her reporting she might have been."  Tr. 536.  Dr. Dougherty diagnosed Plaintiff

26   with rule out symptom exaggeration.  Tr. 533.

27       The ALJ did not err in relying on Dr. Dougherty's evaluation to find

28   Plaintiff may be exaggerating her symptoms.  Although he did not find Plaintiff

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 15

malingering *per se*, Dr. Dougherty provided several reasons for why he was skeptical of Plaintiff's reporting and test results. Without a definitive diagnosis of malingering, this reason alone would not be enough to support an adverse credibility determination. But with other clear and convincing reasons, this reason would tend to support the ALJ's adverse credibility determination.

Some of the ALJ's reasons supporting his adverse credibility determination were specific, clear, and convincing; some were not. As discussed *supra*, remand is necessary to determine whether Plaintiff satisfies Listing 12.05C. On remand, the ALJ shall also reconsider Plaintiff's credibility based on the above analysis. The ALJ should credit Plaintiff's reporting or give specific, clear, and convincing reason, supported by substantial evidence, for why he does not fully credit Plaintiff's symptom reporting.

**C.     Working on a Regular and Consistent Basis**

Plaintiff argues the ALJ's determination that she can work on a regular and consistent basis is not supported by substantial evidence and is contradicted by the opinions of Ms. Grandmason, Ms. Worley, and Dr. Gardner. ECF No. 19 at 13-17.

**1.     Acceptable Medical Sources**

Only acceptable medical sources, including licensed physicians and psychologists, can provide evidence to establish an impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a).

Jerry Gardner, Ph.D., completed a Mental Residual Functional Capacity Assessment for the State agency in October 2010. Tr. 321-337. Dr. Gardner found Plaintiff's mental impairments largely did not significantly limit her ability to perform work related tasks. Tr. 335-336. Dr. Gardner found Plaintiff moderately limited in three areas of mental functioning, Tr. 335-336, but ultimately concluded Plaintiff "has the capacity to perform [simple routine tasks] on a sustained basis throughout the course of a normal workweek," Tr. 337. The ALJ gave "great weight" to Dr. Gardner's findings and opinions. Tr. 27.

1    Plaintiff argues that Dr. Gardner's assessment of moderate limitations

2  should be construed as limitations that have "significant interference" with

3  Plaintiff's ability to work.  ECF No. 19 at 14-16.  The Court need not address the

4  merits of Plaintiff's argument.  There may be cases in which the distinction argued

5  by Plaintiff would support the finding that a claimant is not capable of sustained

6  work.  But in this case, Dr. Gardner clearly found Plaintiff was capable of working

7  "on a sustained basis throughout the course of a normal workweek."  Tr. 337.

8  Given this conclusion, the fact that Dr. Gardner checked three boxes indicating

9  moderate limitations does not constitute substantial evidence that Plaintiff is

10  unable to work as argued by Plaintiff.  *See Murray v. Heckler*, 722 F.2d 499, 501

11  (9th Cir. 1983) (stating preference for individualized medical opinions over check-

12  off reports).

13    **2.    Other Sources**

14    An ALJ is required to consider evidence from "other sources," including

15  physicians' assistants and nurse practitioners, 20 C.F.R. § 416.913(d); SSR 06-03p,

16  "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d

17  at 1232.  An ALJ must give "germane" reasons to discount evidence from "other

18  sources."  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  Even though

19  medical source evidence is the only way to establish an impairment, an ALJ cannot

20  ignore information from non-acceptable medical sources regarding a claimant's

21  physical and mental capabilities.  *Sprague*, 812 F.2d at 1232.

22    **a.    Terra Grandmason, ARNP**

23    Ms. Grandmason was Plaintiff's treating source at Yakima Valley Farm

24  Workers Clinic (YVFWC) beginning in October 2009 until June 2011.  Tr. 476,

25  517.  Ms. Grandmason treated Plaintiff for a variety of complaints, but mostly for

26  her chronic pain in her right hip and back, weight loss, and depression/anxiety.

27  *See, e.g.,* Tr. 360, 362-363, 376-377, 382.  Ms. Grandmason prescribed Plaintiff

28  numerous medications, referred Plaintiff to a pain clinic, and ordered several

different medical tests including MRIs and a bone density test.  Ms. Grandmason completed disability paperwork in support of Plaintiff's application for state benefits in which she assessed numerous physical and mental limitations.  *See* Tr. 518-520 (disability report dated March 9, 2010); Tr. 522-524 (disability report dated March 31, 2011).

The ALJ gave little weight to Ms. Grandmason's opinions, reasoning they were conclusory and without adequate explanation.  Tr. 27.  The ALJ also noted Ms. Grandmason was not an acceptable medical source.  Tr. 27.

The ALJ did not give germane reasons for rejecting Ms. Grandmason's opinions.  It appears the ALJ only considered Ms. Grandmason's opinions contained in the disability paperwork she completed in support of Plaintiff's application for state benefits.  *See* Tr. 27 (citing Ex. 20F (Tr. 516-528)).  The ALJ reasoned that Ms. Grandmason's opinions were conclusory, but did not take into account the numerous treatment records completed by Ms. Grandmason that would support such opinions.  Furthermore, the fact that Ms. Grandmason is not an acceptable medical source is not a germane reason for rejecting her opinions regarding how Plaintiff's impairments affect her ability to work.  *Sprague*, 812 F.2d at 1232.  On remand, the ALJ shall reevaluate Ms. Grandmason's opinions and her assessments of Plaintiff's limitations in light of her treatment notes.

### b.   Rachel Worley, NP-C

In response to a questionnaire prepared by Plaintiff's counsel dated August 23, 2012, Ms. Worley opined that Plaintiff would have to lie down 1-2 times a day due to pain.  Tr. 449.  Ms. Worley apparently began seeing Plaintiff in January 2012 after Ms. Grandmason left YVFWC in June 2011.  Tr. 482-483.  Ms. Worley indicated Plaintiff's working on a regular and continuous basis would *not* cause Plaintiff's condition to deteriorate.  Tr. 450.  Ms. Worley opined that physical work would cause "exacerbating pain," but was "not sure if pain would worsen with

///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 18

sedentary job." Tr. 450.  Ms. Worley opined that Plaintiff would likely miss one day of work per month.  Tr. 450.

The ALJ gave little weight to Ms. Worley's opinions reasoning that Ms. Worley relied heavily on Plaintiff's unreliable self-reporting and Ms. Worley was not an acceptable medical source.  Tr. 27.

Again, simply because Ms. Worley is not an acceptable medical source is not a germane reason for rejecting her opinions regarding how Plaintiff's impairments affect her ability to work.  *Sprague*, 812 F.2d at 1232.  However, the ALJ may generally discount an opinion based on a claimant's unreliable self-report.  *Tommasetti*, 533 F.3d at 1041.  The Court held *supra* that the ALJ's adverse credibility determination contained errors and ordered the ALJ to reevaluate some of his reasoning on remand.  If, on remand, the ALJ finds Plaintiff credible, the ALJ will need to reconsider Ms. Worley's opinions.

**D.    Lay testimony**

Plaintiff argues the ALJ failed to properly consider the statements of Amber Chandler, Plaintiff's daughter.  ECF No. 19 at 22-23.

Lay witness testimony cannot establish the existence of medically determinable impairments.  *See* 20 C.F.R. § 416.913(d)(a).  Lay witness testimony is, however, "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); 20 C.F.R. § 416.913(d)(4); *see also Dodrill*, 12 F.3d at 918-919 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").  Simply stating that the lay witness testimony does not objectively establish a medically determinable impairment is not a germane reason for rejecting lay witness testimony that concerns a claimant's ability to work.  *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (stating that the ALJ "should not have discredited [a lay witness's] testimony on the basis of its relevance or irrelevance to medical conclusions.").

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 19

Ms. Chandler testified Plaintiff used to be more outgoing and active. Tr. 78. Ms. Chandler stated Plaintiff cannot go shopping or play with her grandchildren. Tr. 78. Ms. Chandler further stated that when Plaintiff worked as a nurse's assistant, Plaintiff had a more positive attitude and seemed better. Tr. 79. Ms. Chandler confirmed that Plaintiff's reporting of her symptoms and limitations were truthful. Tr. 80. Ms. Chandler stated physical therapy seemed to help Plaintiff "a lot." Tr. 80. Ms. Chandler also testified Plaintiff had a difficult time focusing. Tr. 82.

The ALJ gave little weight to Ms. Chandler's opinions reasoning that her testimony "essentially repeats [Plaintiff's] allegations, which [were] not fully credible." Tr. 28.

As discussed *supra*, the Court found the ALJ's adverse credibility determination contained errors and ordered the ALJ to reevaluate some of his reasoning on remand. If the ALJ finds Plaintiff credible after the remand and reevaluation ordered here, the ALJ should also credit Ms. Chandler's testimony or give other germane reasons for giving it little weight.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAlliser v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were

properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-596 (9th Cir. 2004).

Remand in this case is necessary for the ALJ to consider whether Plaintiff meets Listing 12.05C, as well as for other reasons discussed *supra*. Like the Ninth Circuit in *Thresher*, the Court finds further proceedings necessary in this case for "clarification regarding the nature of the considerations applied at step 3 and, particularly, precisely what was decided and why." *Thresher*, 283 F. App'x at 475; *see also Bester v. Comm'r of Soc. Sec.*, 2015 WL 1211386, at *8 (W.D. Mich. Mar. 17, 2015) ("[Resolving the question of whether claimant meets Listing 12.05C] requires expertise which this Court does not possess and the resolution of factual disputes which this Court is not permitted to undertake in the first instance."); *Williams v. Colvin*, 2014 WL 3828224, at *10 (E.D. Va. Aug. 4, 2014) (remanding for further proceedings when "the ALJ failed to specifically mention, let alone analyze Plaintiff under Listing 12.05"). If the ALJ finds that Plaintiff does not meet Listing 12.05C, then the ALJ will need to reevaluate Plaintiff's credibility and the medical evidence consistent with this opinion.

In determining whether Plaintiff meets Listing 12.05C, the ALJ shall determine whether Plaintiff has shown: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *See Maresh v. Barnhart,* 438 F.3d 897, 899 (8th Cir. 2006) (breaking Listing 12.05C into a three prong test). To guide the ALJ's analysis on remand, each prong of this test is discussed in greater detail below.

**A.      Validity of IQ Score**

An ALJ may reject a claimant's IQ scores if they are invalid. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05C (requiring a "valid" IQ score to meet the Listing); *Thresher,* 283 F. App'x at 475 ("We do not doubt that an ALJ can decide that an IQ score is invalid."). In determining an IQ score's validity, the ALJ may

rely on external evidence of a score's invalidity, such as improper testing conditions or a claimant's participation in activities inconsistent with the IQ score. *See Thresher,* 283 Fed. App'x at 475 n. 6 (citing cases); *but see Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057 (C.D. Cal. 2010) ("[T]he ALJ cannot disregard a valid IQ simply because other evidence in the record could support a finding of nondisability in the absence of such a score."). On remand, the ALJ must provide sufficient reasoning, supported by substantial evidence, regarding whether Plaintiff's IQ score is valid. In making this determination, the ALJ may need to supplement the record by obtaining Plaintiff's academic records or other "external evidence" that has bearing on Plaintiff's intellectual functioning.

**B.    Onset Before Age 22**

The requirement that a claimant's intellectual disability arose before age 22 "seems intended to limit coverage to an innate condition rather than a condition resulting from a disease or accident in adulthood." *Novy v. Astrue,* 497 F.3d 708, 709 (7th Cir. 2007) (citations omitted). Several courts, including courts within this district, have accepted the proposition that a person's IQ remains fairly constant throughout his or her life. *See Whiteside v. Colvin*, 2013 WL 5373040, at *5 (E.D. Wash. 2013) (collecting cases). Courts that have accepted this proposition have found a rebuttable presumption that, "absent evidence of sudden trauma that can cause retardation, the [claimant's adult] IQ tests [are] . . . fairly constant . . . throughout her life." *See*, *e.g.*, *Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012); *Whiteside*, 2013 WL 5373040, at *5. One basis underlying this rebuttable presumption is the fact that there are many reasons why someone would not have obtained an IQ test early in life, so requiring a contemporaneous qualifying test score would present intractable problems of proof in many cases of legitimate intellectual ability. *Talavera,* 697 F.3d at 152; *see also Luckey v. U.S. Dept. of Health and Human Servs.*, 890 F.2d 666, 688 (4th Cir. 1989) ("[T]he absence of an
///

IQ test during the developmental years does not preclude a finding of [intellectual disability] predating age 22.").

On remand, if the ALJ determines Plaintiff meets the first prong of the 12.05C test, the ALJ should presume Plaintiff's IQ was similar prior to age 22. The ALJ must provide sufficient reasons, supported by substantial evidence, to rebut this presumption.

## C.   Impairment Imposing Additional and Significant Limitation

An impairment imposes a "significant work-related limitation of function" when "its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning*, 827 F.2d at 633. This is essentially the same standard used to determine if an impairment is severe at step two. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

In this case, this prong is satisfied given that the ALJ found Plaintiff had numerous other severe impairments, i.e., impairments that have more than a minimal effect on Plaintiff's ability to work. Tr. 19.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and partially based on legal error.   Accordingly, **IT IS ORDERED:**

1.     Defendant's Motion for Summary Judgment, **ECF No. 25**, is **DENIED**.

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.     Application for attorney fees may be filed by separate motion.

///
///
///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 23

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED May 22, 2015.



_____

JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE